UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIL SOON PARKS,

    Plaintiff,                                Civil Action No. 13-10799

v.                                           HON.   DENISE PAGE HOOD
                                              U.S. District Judge
                                              HON. R.   STEVEN WHALEN
COMMISSIONER OF SOCIAL         U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Kil Soon Parks ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).   For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be DENIED, that Plaintiff's Motion for Summary Judgment be GRANTED, and that the case be REMANDED FOR AN AWARD OF BENEFITS.

## PROCEDURAL HISTORY

On June 2, 2010, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") alleging an onset of disability date of

date of July 15, 2009 (Tr. 123-129, 130-133). After the initial denial of the claim, Plaintiff requested an administrative hearing, held on October 12, 2011 in Lansing, Michigan (Tr. 32). Administrative Law Judge ("ALJ") Thomas L. Walters presided. Plaintiff, represented by Tara McKenzie, testified, (Tr. 36-50), as did Sharon Princer, a vocational expert ("VE") (Tr. 51-54). On November 4, 2011, ALJ Walters determined that Plaintiff was not disabled, finding that although she was unable to return to her past relevant work, she was capable of a significant number of exertionally medium jobs (Tr. 25-27). On January 18, 2013, the Appeals Council denied review (Tr. 1-6). Plaintiff filed for judicial review of the final decision on February 27, 2013.

## BACKGROUND FACTS

Plaintiff, born August 5, 1951, was 60 when the ALJ issued his decision and 59 at the time her entitlement to DIB expired on June 30, 2011 (Tr. 123, 27). She completed third grade and received state sponsored vocational training in 2004 (Tr. 146). She worked previously as a factory worker and an inspector (Tr. 146). She alleges disability as a result of diabetes, back pain, depression, hypertension, hyperlipidemia, asthma, and arthritis (Tr. 145).

### A.     Plaintiff's Testimony

Plaintiff offered the following testimony:

She currently lived in Fowlerville, Michigan (Tr. 36). A native of Korea, she left school in third grade due to financial hardship (Tr. 36). She emigrated to the U.S. in 1973 (Tr. 36). She and her husband had two adult children (Tr. 37).

She did not receive a pension or Workers' Compensation (Tr. 37). Between 1986 and 2004, she worked as an inspector, requiring her to examine aluminum wheels before they left the factory (Tr. 37). The inspector position required her to lift up to 37 pounds (Tr. 38). She later took a job as a sorter, but was unable to keep up with the work pace (Tr. 38). She last worked in 2008 (Tr. 38).

Plaintiff was unable to read an English language newspaper (Tr. 39). Her husband helped her fill out the DIB and SSI forms (Tr. 39). During her time as an inspector, her husband worked in same factory and filled out forms for her when necessary (Tr. 39-40). Her inability to perform the sorter position was due to both her inability to keep pace and her lack of strength (Tr. 40). She was diagnosed with diabetes more than 20 years ago and now required four injections a day to keep her sugar levels stable (Tr. 40-41). She also experienced hypoglycemic "dips," approximately twice a week (Tr. 42). As a result of diabetes, she experienced diabetic neuropathy of the lower extremities causing foot pain (Tr. 43). The condition was exacerbated by prolonged standing and walking (Tr. 43). After standing for two hours, lower extremity problems obliged her to recline with her legs elevated (Tr. 43-44). She also experienced sleep disturbances as a result of pain and depression (Tr. 44-45). She experienced limited relief from depressive symptoms by taking Sertraline but nonetheless experienced "bad days" (Tr. 45).

She used an inhaler for asthma (Tr. 46). She estimated that she could walk up to half a mile (Tr. 46). She and her husband currently lived in her daughter's basement (Tr. 46-47). She also experienced blurred vision as a result of diabetes (Tr. 47-48). She

relied on her husband for transportation, but was able to drive (Tr. 48). She experienced low energy and often slept during the day (Tr. 48). She was able to clean and perform laundry chores (Tr. 49). She was unable to return to her inspection position due to the job's lifting requirements (Tr. 49).

## B. Medical Evidence

### 1. Treating Sources[1]

In August, 2007, Plaintiff underwent bilateral cataract removal surgery (Tr. 282-285). March, 2008 ophthalmological records state that Plaintiff was unable to pass a vision test to renew her driver's license (Tr. 268). The notes state that she did not use eyeglasses for either distance or near vision (Tr. 268). A September, 2008 testing states that glucose levels were well controlled (Tr. 231). Plaintiff reported good results from Singular (Tr. 223).

---

[1] Treating records predating the alleged onset of disability date of July 15, 2009 are included for background purposes.

The following month, she reported foot pain and numbness (Tr. 220). April, 2009 test results show that Plaintiff's glucose levels were elevated (Tr. 230). Plaintiff reported vision problems and back pain (Tr. 218). November, 2009 and January, 2010 test results also show that her glucose levels were "poor[ly] controlled" (Tr. 224, 227-228). November, 2009 ophthamological treating records note unstable blood sugar levels were creating vision problems (Tr. 238). February, 2010 records state that Plaintiff had benign ocular lesions removed (Tr. 240).

August, 2010 treating notes by Elizabeth Morelli, M.D. state that Plaintiff experienced "constant hunger," and "excessive thirst," as well as fatigue and numbness and burning of the hands and feet (Tr. 320). Dr. Morelli's notes state that Plaintiff and her husband had recently "lost everything" when her husband became ill (Tr. 320). Dr. Morelli prescribed Zoloft for depression (Tr. 320). In October, 2010, Plaintiff reported blurred vision, excessive thirst, frequent urination, fatigue, and numbing, tingling, and burning of the extremities (Tr. 313).

In November, 2010, Dr. Morelli completed an assessment on behalf of Plaintiff's disability claim, noting diagnoses of neuropathy and retinopathy (Tr. 250). Dr. Morelli found that Plaintiff was unable to perform any walking or standing and could not sit for more than 15 minutes at a time (Tr. 250). Dr. Morelli found that Plaintiff should refrain from all stooping, balancing, and fine manipulation (Tr. 250). She found that Plaintiff could perform gross manipulations and reach overhead on an occasional basis (Tr. 250). She found further that Plaintiff experienced "moderate" pain and was incapable of

performing exertionally light[2] work (Tr. 250). Dr. Morelli noted that Plaintiff was limited by neuropathic pain in the lower extremities and decreased strength in the upper extremities (Tr. 251). She opined that Plaintiff "would need to take frequent breaks for snacks due to diabetes" (Tr. 251).

In January, 2011, ophthalmological records state that Plaintiff was "not interested" in using glasses (Tr. 252). Her best "corrected vision" was 20/70 on the right and 20/40 on the left (Tr. 328). Dr. Morelli's treating notes state that Plaintiff experienced numbness and pain of the extremities (Tr. 306). In July, 2011, Plaintiff completed a health related questionnaire, stating that she had not experienced poor physical health in the last 30 days, but experienced depression and fatigue on a daily basis (Tr. 326). She was medication compliant (Tr. 325). Dr. Morelli's September, 2011 treating notes state that Plaintiff described her diabetes as "stable" but that she experienced glucose readings as high as 300 and averaging 99 (Tr. 289). Plaintiff reported continued anxiety and depression (Tr. 289). Plaintiff denied current symptoms of neuropathy (Tr. 289).

---

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

### 2.  Non-treating Sources

In August, 2010, neurologist Elaine Kountanis, M.D. performed a one-time consultative examination (Tr. 245-248).  Dr. Kountanis noted that blood sugar tests revealed that on nine out of 26 days, Plaintiff experienced hypoglycemia "below 60" and on 10 of 26 days she experienced blood sugar levels between 400 and 500 (Tr. 245). Plaintiff reported that she needed to urinate approximately 10 times a night (Tr. 245).  Dr. Kountanis also noted diagnoses of cataracts and diabetic retinopathy (Tr. 245).

Dr. Kountanis remarked that Plaintiff and her husband had recently lost their home and were living in the basement of a friend's house (Tr. 246).  Plaintiff reported that her asthma symptoms were exacerbated by "damp and moldy" living conditions (Tr. 246). She did not exhibit edema or skin changes (Tr. 246).  Dr. Kountanis noted Plaintiff experienced some level of hypoglycemia on a daily basis, adding that Plaintiff's "dementia like presentation" could be attributable to hypoglycemia (Tr. 247).  Dr. Kountanis stated depression could be "playing a role" in Plaintiff's affect (Tr. 247).

### C.  Vocational Expert

VE Sharon Princer   classified Plaintiff's past job as a metal inspector as skilled at the medium exertional level and work performed in 2007 and 2008 as a molding machine tender, unskilled/light (Tr. 51).    The ALJ then posed the following hypothetical question to the VE, taking into account Plaintiff's age, education, and work background:

> Let me ask you to assume a person . . . who would have a residual functional capacity for a range of light work that was done in a clean air environment. If those were the only limitations, would such a person be able to perform any of the past jobs as classified by the [Dictionary of Occupational Titles ("DOT")]? (Tr. 51).

The VE responded that the hypothetical limitation of "clean air" would preclude all past work (Tr. 51). The VE testified that if the hypothetical question allowed performance of exertionally medium, rather than light work, the individual could work as a child care worker (5,307 positions in the lower peninsula of Michigan) and hand packager (4,797) (Tr. 52).

The VE testified that if Plaintiff's testimony regarding physical limitations were fully credited, she would be unable to perform any work due the inability to stand for more than two hours, the need to elevate her legs, eye problems, depression, low energy, and the need to sleep during the day (Tr. 52-53). The VE stated that her testimony was consistent with the information found in the DOT (Tr. 53). In response to questioning by Plaintiff's attorney, the VE testified that if the individual were unable to lift more than five pounds, or, needed to elevate her legs over the course of the workday, she would be unable to perform the jobs of child care worker or hand packager (Tr. 54).

### D.     The ALJ's Decision

Citing the medical transcript, ALJ Walter's found that although Plaintiff experienced the severe impairments of "diabetes; back [pain]; depression; and asthma" none of the conditions met or medically equaled one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (Tr. 22-21). He found that while Plaintiff's limitations in

activities of daily living and social functioning were "mild," she experienced moderate limitations in concentration, persistence, or pace (Tr. 21-22). The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") for unskilled, exertionally medium work "in a clean environment" (Tr. 22). Adopting the VE's job findings, he determined that Plaintiff could perform the "unskilled" work of a child care worker and hand packager (Tr. 26).

The ALJ discounted Plaintiff's allegations of limitation as a result of asthma, finding that the condition was well controlled with medication (Tr. 24). He noted that Plaintiff's self-admitted activities included talking to her friends on the telephone, playing golf, and taking care of her grandchildren and the family pets while her daughter and son-in-law were at work (Tr. 25). The ALJ rejected Dr. Morelli's November, 2010 assessment on the basis that it was inconsistent with "her own objective clinical findings and treating records . . . , the medical evidence, other treatment records, and the record as a whole" (Tr. 23).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated*

*Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

**FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's

impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. The Treating Physician Analysis

Plaintiff argues first that the ALJ erred by discounting Dr. Morelli's November, 2010 assessment. *Plaintiff's Brief* at 6-10, *Docket #11* (citing Tr. 23,250-251). Plaintiff also contends that the ALJ did not provide "good reasons" for giving "[l]ittle weight" to the treating physician's disability opinion. *Id.* at 6-7 (citing *Gayheart v. Commisioner of Social Security,* 710 F. 3d 365, 376 (6th Cir. 2013)).

Plaintiff is correct that an opinion of limitation or disability by a treating source is entitled to deference. "[I]f the opinion of the claimant's treating physician is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue*, 573 F. 3d 263, 266 (6th Cir. 2009)(internal quotation marks omitted)(citing *Wilson v. Commissioner of Social Sec.,* 378 F.3d 541, 544 (6th Cir. 2004). Further,

> [i]f the opinion of a treating source is not accorded controlling weight, an

–11–

> ALJ must apply certain factors--namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source--in determining what weight to give the opinion.

*Wilson*, at 544 (citing 20 C.F.R. 404.1527(c)(2-6)).

*Gayheart* is the latest in a long line of published Sixth Circuit cases holding that the failure to provide "good reasons" for rejecting a treating physician's opinion constitutes reversible error. *Id.* 710 F. 3d at 376; *Wilson,* at 544-446 (citing § 404.1527(c)(2)). "[T]he Commissioner imposes on its decision-makers a clear duty to 'always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion.'" *Cole v. Astrue* 661 F.3d 931, 937 (6th Cir. 2011). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Gayheart,* at 376 (citing SSR 96-2p, 1996 WL 374188, *5 (1996)).

In rejecting Dr Morelli's findings, the ALJ stated that "[l]ittle weight is given to the assessment of Dr. Morelli[], as it is inconsistent with her own objective clinical findings and treating records . . ., the medical evidence, other treatment records, and the record as a whole" (Tr. 23).

There is some evidence in the record that would support the ALJ's rejection of at least some portions of the treating source opinion. As noted by the ALJ, Plaintiff acknowledged that she was able to perform light household chores, take care of pets, and

participate in golf outings once a week (Tr. 25). Standing alone, these activities would tend to contradict Dr. Morelli's finding that Plaintiff was unable to perform *any* standing, walking, or fine manipulations (Tr. 250).

In contrast, Plaintiff is correct that the ALJ's generalized statement that Dr. Morelli's findings contradicted her own treating notes and the rest of the record does not constitute "good reasons" for the rejection. "'The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases,' particularly in situations where a claimant knows that his physician has deemed him disabled and therefore 'might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" *Wilson,* 378 F.3d at 544 (citing *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir.1999)).

In this case, the "reasons" supplied shed little light on the rationale for rejecting the treating opinion. The rejection of Dr. Morelli's opinion on the basis that it contradicted her own treating notes and the rest of record is particularly unhelpful, given that the treating records and the rest of the transcript do contain evidence supporting the treating opinion. Because the treating physician analysis provides only the most generalized rationale for rejecting Dr. Morelli's opinion, remand is warranted on this basis.

### B. The Mental Impairments

Plaintiff argues next that the ALJ did not factor her limitations as a result of depression into either the hypothetical question to the VE or the RFC found in the

administrative opinion. *Plaintiff's Brief* at 10-12. On a related note, she contends that neither the hypothetical question nor RFC addressed her moderate limitations as a result of "concentration, persistence, and pace" as found in the administrative opinion. *Id.* at 11 (citing Tr. 22). On a related note, she points out that the administrative finding that she could perform the job of child care worker was based on erroneous VE testimony. *Id.* at 13-15 (citing Tr. 26, 51-52).

Courts from this District and elsewhere have found that moderate deficiencies in concentration, persistence, and pace ("CPP") suggest substantial limitations which must be acknowledged at Step Five of the administrative sequence. *Edwards v. Barnhart*, 383 F.Supp.2d 920, 931 (E.D.Mich.2005) (Friedman, J.). The failure to account for moderate deficiencies in CPP in the hypothetical question constitutes reversible error. *Id.*; *See also Ealy v. Commissioner,* 594 F.3d 504 (6th Cir.2010). However, the evidence of record and the ALJ's opinion must be considered in their entirety in determining whether the hypothetical limitations adequately describe the claimant's limitations. *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir.2001); *see also Schalk v. Commissioner of Social Sec.*, 2011 WL 4406824, *11 (E.D.Mich. August 30, 2011)("no bright-line rule" that moderate concentrational deficiencies require the inclusion of certain hypothetical limitations)(citing *Hess v. Comm'r of Soc. Sec.,* No. 07–13138, 2008 WL 2478325, at *7 (E.D.Mich. June 16, 2008)).

Here, the question to the VE limited Plaintiff to unskilled medium work in a "clean air" environment (Tr. 51-52). However, the modifier "unskilled work," with nothing

more, is grossly inadequate to account for Plaintiff's concentrational problems, even assuming that the "unskilled" work limitation would be adequate in some cases to account for moderate limitation in CPP. Dr. Kountanis' August, 2010 consultative examination notes reference a "dementia like presentation" (Tr. 247). The fact that Dr. Kountanis declined to determine whether the affect was due to hypoglycemia or depression is immaterial to conclusion that the mental condition would curtail the range of unskilled jobs. Plaintiff reported symptoms of depression on a daily basis (Tr. 289, 326) and was prescribed antidepressants for the condition (Tr. 320). The hypothetical limitation of "unskilled," with nothing more, was insufficient to account for this Plaintiff's psychological/mental limitations. Notably, while the hypothetical question does not contain any other modifier than "unskilled," the ALJ noted in the text of his opinion that Plaintiff's "difficulty writing and reading" limited her to "simple, unskilled" work (Tr. 24).

Moreover, Plaintiff is correct that the deficiencies in the hypothetical question are coupled with erroneous vocational expert testimony. The question to the VE limited the hypothetical individual to unskilled work (Tr. 51-52). However, by the VE's own account, one of her two job findings, child care worker, is classified by the DOT as SVP 3 which makes it semiskilled rather than unskilled work[3] (Tr. 52).

Plaintiff points out that the elimination of child care worker from the job findings leaves only the job finding of hand packer with 4,797 positions in the lower peninsula of

---

[3]http://www.ssa.gov/OP_Home/rulings/di/02/SSR2000–04–di–02.html.

Michigan.  *Plaintiff's Brief* at 14 (citing Tr. 26, 52).  She argues that 4,797 jobs for the entire lower peninsula does not constitute a "significant number" as required to support a Step Five finding.  *Id.* (citing *Hall v. Bowen,* 837 F.3d 272, 274-275 (6th Cir. 1988).

The Sixth Circuit has held that it is "impossible to set forth one special number as the boundary between a 'significant number' and an insignificant number of jobs." *Born v. Sec'y of Health & Human Servs.,* 923 F.2d 1168, 1174 (6th Cir.1990), citing *Hall,* 837 F.2d at 275 (6th Cir.1988).   This Court has stated in the past that it "is unaware of any case law stating that . . . 5,200 statewide jobs" do not constitute a significant number.  *Ausborn v. Commissioner of Social Sec.*  2013 WL 823225, *7 (E.D.Mich. January 4, 2013).  However, the question of whether the hand packager positions cited by the VE is a substantial number is mooted by the fact that the vocational testimony itself was given in responsive to an incomplete hypothetical question. Because upon remand, a hypothetical question including all of Plaintiff's relevant limitations would presumably result in a different number altogether, the Court declines to address the "significant number" argument.

Other portions of the administrative decision contain questionable findings, including a statement that Plaintiff stopped working in 2004 when she moved to China (Tr. 23), whereas her testimony indicates that she was laid off when *the company she worked for* moved its factory to China (Tr. 38).  While the ALJ cited Plaintiff's ability to talk to her friends, take care of the family pets, drive, and perform household chores in support of his credibility determination, her ability to perform these activities for short periods followed

by a break does not establish that she is capable of full-time employment. *See Walston v. Gardner,* 381 F.2d 580, 586 (6th Cir.1967)(claimant's ability to drive, grocery shop, wash dishes and sweep floor on an intermittent basis does not establish the "ability to engage in substantial gainful activity").4

Further, the ALJ's determination that Plaintiff, who was 60 at the time of the determination and 59 at the time her entitlement to DIB expired, is capable walking six hours a day and lifting up to 50 pounds stands at odds with evidence of daily fatigue as a result of hypoglycemic dips and depression. 20 C.F.R. § 404.1567(c). The ALJ's finding of a capacity for medium work is of particular concern, given that a determination that an individual 55 or older was capable of only unskilled, exertionally light or sedentary work would direct a disability finding. *Preslar v. Secretary of Health and Human Services,* 14 F.3d 1107, 1111 (6th Cir.1994); 20 C.F.R. § 404, Subpart P, App. 2, Rule 202.04.

The deficiencies in the administrative opinion necessitate a remand. Because there is a lack of substantial evidence that the Plaintiff can perform exertionally medium work, and given her age, the case should be remanded for an award of benefits. *Id.*; *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir.1994).

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment be

---

4 The ability to occasionally play golf does not translate into an ability to perform medium work (i.e., lifting 25 pounds regularly and 50 pounds occasionally) on a full-time basis.

DENIED, that Plaintiff's Motion for Summary Judgment be GRANTED, and that the case be REMANDED FOR AN AWARD OF BENEFITS.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: February 10, 2014         R. STEVEN WHALEN
                                 UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on February 11, 2014, electronically and/or by U.S. mail.

                                                        s/R. Steven Whalen
                                                       Case Manager to the
                                                       Honorable R. Steven Whalen